# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT INDIANA

| | |
|---|---|
| RONALD BREWER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES STEEL CORPORATION, d/b/a U.S. STEEL,<br><br>Defendant. | CAUSE NO.: 2:15-CV-437-TLS |

## OPINION AND ORDER

The Plaintiff, Ronald Brewer, sued Defendant United States Steel Corporation for negligence after he slipped and fell inside a building on its premises. This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 59]. For the reasons stated below, the Motion is denied.

## FACTUAL BACKGROUND

On February 10, 2015, the Plaintiff's job as a truck driver for MDI Transportation brought him to the Defendant's premises, where he was scheduled to remove and transport an old copier machine. The Plaintiff, accompanied by a co-worker, drove onto the property and checked in with Mike Kramer, an employee of U.S. Steel in the IT department. Kramer was the Plaintiff's contact at the Defendant's facility. He authorized all the Plaintiff's pickups and deliveries and provided relevant instructions. On February 10, 2015, Kramer, driving in his own vehicle, escorted the Plaintiff to the building several miles away that housed the copier.

As instructed by Kramer, the Plaintiff backed his truck up to the building's large overhead door. He exited the truck, walked to the back and assisted his co-worker in removing

the equipment from the truck that would be necessary to complete the pickup. This included a stair walker and a roll of shrink wrap. As the Plaintiff walked into the large warehouse type building with the stair walker, he noticed that none of the lights were on. After walking about fifteen feet, he also noticed snow and ice on the ground. In fact, the Plaintiff had already walked through a section of snow with ice underneath it.[1] The Plaintiff asked Kramer if it cleared up further into the building. Kramer indicated that icy conditions existed throughout the building. The Plaintiff learned that the Defendant was not using the facility, and a pipe had burst inside the building. The Plaintiff expressed that it would not be safe to continue to retrieve the copier. Kramer and others who were on site discussed other potential options, but the Plaintiff had already decided that he would not be completing the job that day, especially since it involved bringing a heavy piece of equipment down a couple flights of stairs that was still another one hundred yards away from where he was standing.

Having made his decision, the Plaintiff turned around and walked back toward his truck. As he walked through the section of snow, he lost his footing and fell. When asked during his deposition why he walked back through the snow, the Plaintiff replied, "we had to walk through it to get out" and there was "no other way." (Mem. in Supp, of Mot. for Summ. J., Ex. A, Pl.'s Dep. 58, ECF No. 60-1; *see also id.,* at 60 ("That was the only path to get back to the truck.").)

---

[1] Photographs taken by the Plaintiff with his cellular telephone show a ribbon of snow covering what appears to be a larger section of dark ice. The Defendant designated these photographs as evidence in support of its Motion for Summary Judgment, stating that they were identified as Exhibits 1, 2 and 3 of the Plaintiff's deposition. The Plaintiff, in response to the Defendant's Motion for Summary Judgment, complained that the photographs submitted with the Defendant's Motion for Summary Judgment "are not, in fact, the same photographs introduced as exhibits at the Plaintiff's deposition." (Pl.'s Resp. 5, ECF No. 61.) The Plaintiff did not elaborate on this assertion, or why it matters for purposes of the Court's review.

Because photographs identified as Exhibits 1, 2, and 3 were discussed during the Plaintiff's deposition, but the photographs submitted by the Defendant do not contain the exhibit stickers, the Court presumes that the Plaintiff's objection is that the designated photographs are copies of the photographs introduced during his deposition. In any event, the photographs with exhibit stickers have been submitted with the Defendant's Reply, and they show the same scenes as the copies the Defendant designated as evidence. For his part, the Plaintiff does not suggest that the designated photographs are not accurate copies, or that they do not depict the same thing as Exhibits 1, 2, and 3.

When asked why he did not ask Kramer to make the conditions safe before walking through it, the Plaintiff explained, "that little area we didn't think was dangerous enough at that time, you know. I didn't think that the whole warehouse was gonna be iced and snowed down." (*Id.* at 64.) He acknowledged that Kramer had, on previous occasions, responded to his request to clear an area, such as when water was puddled on the floor. He did not ask Kramer to clear up the patch, because he was just trying to leave, and did not think it would be hazardous to walk such a short distance, especially since he had already traversed it once and not lost his footing. He also considered the fact that Kramer had not thought it appropriate to clear it up beforehand, or taken the initiative to stop them from coming into to the warehouse in the first place as other reasons for not asking Kramer to clear the patch of ice and snow to exit.[2]

**ANALYSIS**

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Because the Court's jurisdiction over this case is predicated upon diversity, *see* 28 U.S.C. § 1332, it "must apply the law of the state as it believes the highest court of the state would apply

---

[2] The Court notes that the facts, as they are set forth in this Opinion and Order, are from the perspective of the Plaintiff. They do not include the differing account from Kramer, as set forth in his deposition, such as the fact that the Plaintiff entered the facility before Kramer had completed his inspection and authorized it, and that there was an alternative path to the copier that did not require walking through ice and snow. The Defendant did not argue these differences, as they would have been issues for a jury to decide. Rather the Defendant's arguments, and the Court's analysis, focus on the facts regarding a known and obvious condition, which the Defendant maintains are not disputed and establish that the Defendant did not breach its duty as a matter of law.

3

it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). "When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *Id.*

The Plaintiff's negligence claim requires him to prove that the Defendant owed him a duty and breached that duty, resulting in damages. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). The parties do not dispute that the Plaintiff's status as a business invitee on the Defendant's premises imposed on the Defendant a duty to exercise reasonable care for the Plaintiff's protection. *See Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind. 1991) (describing duties owed by landowner); *Douglass v. Irvin*, 549 N.E.2d 368, 369 (Ind. 1990) (holding that a property owner must maintain its property in a reasonably safe condition for business invitees).

Indiana has borrowed from, and adopted, Section 343 of the Restatement (Second) of Torts to supply the features of that duty. It provides that a landowner is liable for personal injuries suffered by his invitee because of a condition on the land "if, but only if," the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 639–40 (quoting Restatement (Second) of Torts § 343, and stating it provides the "best definition" of the landowner's duty to its invitee); *see also Rogers v. Martin*, 63 N.E.3d 316, 322–23 (Ind. 2016) (confirming that when an injury is caused by a condition on the land, "the three elements described in Restatement (Second) of Torts section 343 accurately describe the landowner-invitee duty").

Additionally, § 343 is meant to be read in conjunction with § 343A of the Restatement (Second) of Torts, which addresses known and obvious dangers. *See Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 688 (Ind. Ct. App. 2008). Section 343A provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A. An invitee's mental state of knowledge, appreciation, and voluntary acceptance of the risk demands a subjective analysis of actual knowledge. *See Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003).

The Defendant argues that it is not liable under the above standards because the Plaintiff admitted that the dangerous condition was known and obvious to him, yet he decided to walk through the area anyway. This argument is grounded in the second element of the Restatement's § 343 duty inquiry and it implicates the "open and obvious danger" breach analysis addressed by § 343A. The Plaintiff responds that, by the time he appreciated the danger, there was no other path for him to reasonably take but through the ice and snow. He could not get to his truck without walking through the area where he fell.

If no reasonable jury could find that the Defendant breached the duty of care under §§ 343 and 343A, the Court must grant judgment as a matter of law in favor of the Defendant. Because the Plaintiff "admitted that he was aware of the ice and recognized the danger," the Defendant "is not liable unless [it] should have anticipated the harm despite [the Plaintiff's] knowledge of the danger or the obviousness of the danger." *Countrymark Coop.*, 892 N.E.2d at 691. Considering the facts in a light most favorable to the Plaintiff, the Court finds that a jury could conclude that, under the circumstances existing on February 10, 2015, the Defendant should have expected that the Plaintiff would fail to protect himself from the danger, and should

5

have anticipated the harm despite the Plaintiff's knowledge of the danger or the obviousness of it.

      A jury could conclude, based on the facts before the Court, that it was unreasonable for the Defendant to believe that the Plaintiff would avoid the snowy area when he walked through it to return to his truck. The first time the Plaintiff walked through the snow, he was following Kramer's lead. The Plaintiff had just entered the warehouse and did not realize that the conditions inside the warehouse were similar throughout. This prompted him to ask Kramer if it cleared up further into the building. When the Plaintiff learned that the entire warehouse was unlit and that the floor was ice-covered, he decided he was abandoning the job. The Plaintiff could not return to his truck and leave without traversing the small area of snow. A jury could find that it was unreasonable for the Defendant to believe that the Plaintiff, despite his awareness of the obvious danger, would not attempt to return to his truck parked fifteen feet away and leave the premises. He had no other business to conduct once he decided to abandon the job, which he only decided after learning that the entirety of the building was in a condition that would make retrieval of a large piece of machinery unsafe. The evidence is that the Plaintiff believed that leaving without completing the job was far safer than continuing further into the warehouse, and a jury could find that the Defendant should have anticipated this, and the attendant potential harm.

      The Defendant argues that the Plaintiff could have stayed in place and asked Kramer to clear the danger before walking back through the snowy area. There is no evidence regarding what efforts would have been necessary to make the area safe, or how long it would have taken. The Defendant had not previously cleared the area, and no evidence suggests that they were prepared to do so efficiently upon learning of the condition. The Defendant's comparison to

previous times when Kramer had responded to requests, such as to clear puddles of water, does not account for the various factors that made the situation on February 10, 2015, dissimilar. The Defendant argues that the "Plaintiff's conscious decision not to have the area cleared because he 'just wanted to make it out' is insufficient to prove that [the] Defendant should have anticipated that [the] Plaintiff would walk back through the condition for a second time after he had specifically advised [the] Defendant that he believed the condition to be dangerous." (Def.'s Reply 4–5, ECF No. 62.) The Court disagrees. It will be for a jury to determine whether the Defendant should have anticipated that the Plaintiff would attempt to leave despite what other measures he *could* have *reasonably* taken. The Plaintiff here is like the plaintiff in *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15 (Ind. Ct. App. 2015), who "was not aware of the relative slickness of the parking lot and walkways on the Hotel's property until after she had walked on the parking lot either part or all of the way to her vehicle." 45 N.E.3d at 23 (denying summary judgment because "[a] reasonable jury could conclude that by the time [the plaintiff] had actual knowledge and appreciation of the risk or extent of the slick conditions on the Hotel's property, there was no reasonable opportunity for her to avoid or escape the risk or the conditions under the circumstances"); *see also Get-N-Go, Inc. v. Markins*, 544 N.E,2d 484, 487 (Ind. 1989) (noting that continued exposure to danger does not amount to incurring the risk "where there is no reasonable opportunity to escape from it" where the plaintiff had already walked onto an icy parking lot before realizing the extent of the danger).

The Defendant has not established that the only conclusion a jury could reach is that the Defendant did not breach its duty to maintain the property in a reasonably safe condition for its business invitees because the Plaintiff accepted a known and obvious risk.

7

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion for Summary Judgment [ECF No. 59]. Further settings will be set by separate order.

SO ORDERED on December 5, 2018.

                                            s/ Theresa L. Springmann
                                            CHIEF JUDGE THERESA L. SPRINGMANN